And good morning. Thank you for being with us early this morning. We have one case. It's number 19-1469 United States v. Lisandro Perez. We have Ms. Martin and Mr. Zosmer. And one thing I should note at the outset is that unlike the usual way we do it, Judge Bibas on the panel has a 10 o'clock oral argument. So this is one of the few times we will probably stick to the allotted time for oral argument with my apology. With that, Ms. Martin. Thank you. Good morning, Your Honors. May it please the Court, Christy Martin on behalf of Lisandro Perez. With your permission, I would like to reserve three minutes of my time for rebuttal. That's fine. Quick question at the outset. What would Mr. Perez's guideline range have been without the four-level enhancement? Right now, he has a total offense level of 29 and is 121-151. Without it, we would go down to a 25 and that range would be 84-105. 84-105 instead of 121-151? Yes. Okay. And was there a 60-month mandatory minimum there? No, Your Honor. Okay. Oh, actually, there may have been. I don't have the PSR right in front of me. Okay. On the merits, you argue that in connection with is not ambiguous. But it seems to me in looking at this, and we spent quite a bit of time on it, couldn't reasonable people disagree as to meaning? Well, Your Honor, beginning back with the Supreme Court in the United States versus Smith and this court in Loney, I don't think there can be any disagreement at this point. The courts, including this court, have defined the phrase and quite ably so. It's been defined to mean at a minimum having some purpose or effect with respect to the crime. And the gun's presence cannot be the result of accident or coincidence. I recognize that the government suggests this is a very broad phrase. It may be a little bit vague, but we know from the case law that broad does not mean ambiguous and vague does not mean ambiguous. The court was very clear that we're looking for vagueness or indeterminacy doesn't get you past step one of Kaiser difference. Well, Your Honor, both cases that defined- No, I know there are definitions. I know they put outer bound. But the question is, why is it that that's not enough to get past step one? You agree there's some, Loney says causal or logical or something like that, but it doesn't pin down what the something like that is. So why isn't that unclearness enough to get us past step one of Kaiser difference into step two, whether this is reasonable? What authority says that's not enough? Vagueness is not ambiguity. Well, I think both Kaiser and Maseer tell us that. Both cases go, I would argue, out of their way to point out that seeming ambiguity is not genuine ambiguity. And that, for example, in connection with, can represent a very broad array of different types of relationships. And we've seen that sort of play out when we find out that a firearm doesn't have to be sort of used as a holdup. It can be used as a method of exchange or to sweeten the pot in exchange. So there are various types of relationships. And in that sense, it can be very broad. But that doesn't mean that we don't understand what a relationship or what a connection is. If I could ask you, though, when in Kaiser step one, if we're looking at whether something's ambiguous, the language at issue here is in connection with, we happen to have the benefit of some case law where the courts have said, this is really broad, this can capture lots of relationships. Can't we take just from those observations, that the phrase in connection with is ambiguous, we happen to have the good fortune of having some Supreme Court precedent, and Third Circuit precedent that gives us the meets and bounds of that. But just to get past Kaiser step one, would you agree that at least the words in connection with are ambiguous? Although we do have some court interpretation to help us? Well, Your Honor, I think the court interpretation tells us that it is not genuinely ambiguous, because jurists have been able to reach a consensus on what it means. And there really hasn't been any. There hasn't really been any challenge to that there hasn't been any question that in connection with means what it means, where the confusion comes in comes when the commission decides wants to decide whether we should stick with that meaning of in connection with, or whether we should add a mere coincidence back into that. So I would suggest there was never any sort of conflict about what in connection means, it was whether we wanted more than Smith, the Smith definition when it comes to the guideline. What if we took your took your position that Kaiser does says would not survive Kaiser step one? And therefore we don't we would ignore the application note and just use the language of the sentencing guideline. I assume that's the prism you would want us to follow. And if we were going to do that, right, we would use the interpretations from Smith and Loney, and the other binding precedent, and apply those interpretation of these facts. Am I correct? Yes. If we were to do that, then aren't we getting to the same result? Because among the things that Loney talks about is immediate accessibility. And Smith and Loney talk about potential to facilitate, don't we end up in the same place as it relates to the appropriateness of rewarding the enhancement? I think we may, we certainly may, a district court needs to look at the facts of every case and take into account the totality of the circumstances and determine whether that is appropriate. One of the problems with the way we look at the Smith definition is people, courts, and I would say also the commission has taken potential to facilitate out of its context. Smith did not use that phrase in a vacuum and unmoored to the rest of its definition, which is not accidental or coincidental. And what that leaves us with is we can only interpret potential to facilitate to be that the purpose of the firearms presence was for its potential to facilitate. Purpose or effect. I'm sorry, say again. Sorry. The precedent says the purpose or the effect. Correct. Yes. But what I would argue is that it's more, it's an active possession. Um, and the potential to facilitate has to be the reason for that possession. Otherwise, if we don't, if we don't take potential to facilitate and read it in the context of the whole Smith definition, we run right up against the meaning of inconnection because we're right back to an accident. Let me give you a hypo drug dealer completely forgets that there's a holster on him, right? He's just, he's running around. He was doing some shooting with his kids in the drug deal. He is uncontested that he forgot the holster is there, but it's there and it's visible to someone in front of him. He has no purpose to use the gun in connection with the drugs, but the buyer can see the gun. Doesn't that mean that the effect of it's being visible right there is enough, even though I'm giving you that there's no purpose whatsoever in his mind. Why isn't that enough under the purpose or effect language in the president's to qualify for the enhancement? Your Honor, I think, I think that's a very interesting, um, interesting fact scenario. And I, and I believe you may be right there. I think a district court judge would have to make that determination. It could certainly have an effect. Um, but the, in the end, the note itself doesn't look for that effect. Let's assume you're wrong. And we disagree that this is a step one problem. We say there's some need for interpretation here, and you haven't cited anything that says that because it's vague rather than ambiguous, that that distinction really matters. We think enough interpretation still has to happen. That is not a step one problem, but we get to this step two issue to the extent that the framework is clear. We still have to ask, okay, there's a range of meanings here, but is this one of the reasonable ones? Now that's what you're getting at right now. Okay. So tell me why if we get past step one, we say there's interpretive work to do. Nevertheless, why 14b is not a reasonable interpretation of the text. Well, I think the answer actually still comes back to Smith, which is that we know what in connection with means we may not know the whole breadth of it. We know what it means. And when the guideline sweeps in a category of possessions that are accidental or coincidental, it hits headlong right into that definition. It's simply inconsistent, and it expands the category of cases that will fit under the guideline. The second answer to that, I think, and you, Judge Bibas brought this up in Nasir, is the rule of lenity. If it is that the particular zone of ambiguity that you're referring to, which is what connection means, but if it were to do so, and we go to the rule of lenity, I believe, as you stated in Nasir, there's no compelling reason to defer to a comment that's harsher than the text. So I think for both of those reasons, for the contradiction and that it doesn't fall into the zone of ambiguity that we're looking at, and also because of the rule of lenity, we could not defer to that note. I'm sorry, go ahead, Judge Ambrose. Doesn't the guideline, which came out, I guess, around 06, essentially parrot, and a comment, I should say, doesn't it essentially parrot, Smith, that something has facilitates or has the potential of facilitating a drug trafficking offense? And basically, it can't be the result of just accident or coincidence. It would seem, one could argue, that all that the guideline does and all that the comment 14 does is follow on to Smith, and to some extent, follow on to our case in Loney with one possible exception that Loney says at the very end, physical proximity alone may be insufficient in some cases. Well, Your Honor, I think the problem is that the note cuts the second half of, or the second part of that definition from Smith off. It doesn't take into account that accidental or coincidental possessions cannot be in connection with. What the commission did, and I'll speak specifically to note 14b with respect to drug trafficking, rather than the entire note first, is it completely cuts that out. The commission has adopted, it says it has adopted Smith in note 14. And then in the reason for amendment, it says, in addition, so it says, we've adopted the language from Smith. In addition, the provisions apply in the case of a drug trafficking offense in which a firearm is found in close proximity. So the commission is actually saying we're taking Smith, but we're also adding this other group of firearm possessions in the case of drug trafficking. I thought you argued, though, that Smith operates as almost meets in bounds around proximity, meaning it can't, or yeah, around the proximity,  like I understood your argument to be that, that it's not, it didn't ignore it, but actually acts as parameters around it. That Smith did was denoted. I'm sorry, do you mean that Smith did or? I'm focusing on your argument. I understood your argument to be that application of 14, assuming it has any effect from your point of view, has to have some boundaries. And you say Smith, I understood you'd be saying Smith informs us of what those boundaries are, namely can't be accidental or coincidental. And I got that in part from your conversation with Judge Bevis. Am I wrong? Is that not your argument? I think if we are, if the note is to be saved, for lack of a better word, you would have to impute in the portion of the note that says facilitates or potential to facilitate. You have to impute the rest of that definition from Smith, which, and the note is not explicit about that, which says, excludes accidental or coincidental possessions of firearms. So now 14. Ambrose was asking you that, in fact, isn't it tethered to Smith and Loney? This, this entire thing, and therefore addresses concerns about lenity, et cetera, because there is an understanding that Smith is the, is the foundation, or at least the seed for some of this. So doesn't save it. Oh, it absolutely is tethered to Smith, except it goes further. If we maybe, to explain a little better, when the commission was proposed the note, it offered three proposals. One was mere coincidence is sufficient in burglary and drug trafficking. Two was mere coincidence is sufficient in the case of drug trafficking. Or three, mere coincidence is not sufficient, which would be Smith. And if it appears, and I can't get into the mind of the commission, it appears that in note 14, the commission did adopt Smith. But then in section 14, be added on that extra mere coincidence. Category or universe of cases. So it is in part tethered to Smith. But I think really the crux of the argument is that 14 B takes it a step further and goes too far. With respect to drug trafficking. Unless we have any other questions, I'm going to suggest that we come back and rebuttal in order that I can keep semi close to time. Any further questions of my colleagues? No, thank you. No. Okay, thank you. Mr. Zosmer. Good morning, Your Honor. May I please the court, Robert Zosmer on behalf of the government. I'd like to proceed by step one and then step two. With respect to step one, the question of whether there's an ambiguity. We have to look at just the guideline text, the guideline text by itself. Outset. I thought on page 29 of your response, you're answering grief that you didn't concede that Kaiser applies. Well, we did not. But of course, that was before the Nassir decision. Okay, that answers it. So at step one, is the vagueness here enough? Or does it need to be ambiguity, which technically means two different meanings? It has to be genuinely ambiguous, as this court said in Nassir, taking it from the Kaiser decision in the Supreme Court. And if we look at the guideline text by itself, it says in connection with. It's hard to imagine an example of something that is more genuinely ambiguous than that. And in fact, this court has stated in Loney and in other cases, that's an ambiguous, exceptionally broad term. Well, wait a second, Mr. Zosmer. Ms. Martin was rightly saying broader vague is not the same as ambiguous. Ambiguous means two different meanings. Vague means one fuzzy meaning. So does the vagueness get you there? Well, I think there may be a fuzziness between vagueness and ambiguity as well. It's ambiguous what ambiguous means. That's right. And the Supreme Court said it in Smith. This court said it in Loney. In connection with is an extremely expansive statement. And when it comes to the application of a criminal penalty, that is concerning. It needs to be defined. And the state that we were in before the 2006 amendment is that the courts had to take it on themselves to define what in connection with. And that's why we get this long scholarly opinion by Judge Cowan in the Loney decision to grapple with that and to come up with some kind of confining of it. The Sentencing Commission then does its job, but it's not, I don't think it's fair for or correct for my friend, Ms. Martin to say, well, the court came around and did its job. And so now everything is settled. All right. But as Judge Schwartz said, at the minimum, there are some meets and bounds set by Smith and Loney. And I think Ms. Martin was effective in pointing out, first of all, the word potential facilitate are in the context of it's not being accidental or coincidental. And it has to be tethered to a purpose or effect. And then we'll get to rule entity later. But I don't see those qualifications that we put down in Loney. At the end of Loney, page 204, causal or logical or some relationship like that has to have potential facilitate in that context. I don't see those qualifications in 14b. So 14b is not tracking just what we said in Loney following Smith. What do we do with that? Does that mean that the note can't qualify for Kaiser deference, whether it be a step one or step two? Because it's not reasonable within what we've already said the text on its own means. Well, there are two things there, Your Honor. First of all, I don't believe that the sentencing commission is bound to follow this court statement in Loney. In other words, the agency has a role to play. You think this is brand X deference that under brand X, it can change what the meaning is? We're supposed to let it overrule our precedent in Loney? Not exactly. What I'm saying is that the agency is permitted to interpret its own genuinely ambiguous regulation. And the fact that a court tried to do that earlier, and in fact, courts disagreed, which is one of the reasons that the sentencing commission had to act. The fact that a court did it earlier does not bind the sentencing commission if it comes up with its own reasonable interpretation of its genuinely ambiguous regulation. Now, as it turned out, the sentencing commission did hew very closely to what this court stated in Loney. I'm sure that it examined Loney, as well as the other decisions and was influenced by it. But it certainly was not bound by it. Well, let's talk about that binding. Let's say there's a shotgun in the closet. Okay, there's some junk piled up in front of the shotgun. Closet doors closed. Drugs are just outside the closet. All right. So what's your position? What's the government's position on whether or not the enhancement applies to that shotgun or hunting rifle in an unlocked closet behind a pile of junk? There's some drugs just outside the closet. Physically, it's a few feet away from the drugs. So 14b suggests that that enhancement automatically applies, right? I don't think so. And in fact, there have been cases along those lines. That's a factual question for the court. The court has to apply the Sentencing Commission's application note. So the court has to do factual work, you're saying? Absolutely. Now let's talk about Appendix 109. I don't see the court doing any factual work here. All the court did was parrot the words of the comment. And to be fair to the court, this is pre-Nasir. So under Stinson, the court thought it could just parrot it. But I don't see it having done the factual work that you now say needs to be done. Well, the factual work, really, as I was focusing on your hypothetical, Your Honor, the factual work involves close proximity. If something, it may be a few feet away, but if it's buried under a pile of things, or if it's locked away in a safe or something like that, a court could factually determine that it was not in close proximity within the meaning of the application. What's your authority that proximity means something other than the number of feet? I just think that's a reasonable explanation of it. This is not a per se rule. Loney itself acknowledged at the end that this would not be a per se rule. And the Sentencing Commission has never said that it is. In this particular case, there was no need for the District Court to engage in that factual analysis because the argument wasn't being made to it. The guns were right there in the same room, under a mattress, in immediate accessibility next to a considerable amount of— Doesn't the government bear the burden of proof in showing that an enhancement applies? Definitely. Okay, so does the government bear the burden of proof in showing that this is proximate? Or does the defendant bear the burden of proof in showing it's not proximate? No, the government has the burden of proof by a preponderance— Production and persuasion, right? Yes, sir. All right. So I see the District Court as having just checked a box at page 109, and I don't see it as having articulated facts or the government having articulated facts. So how is that burden on the government satisfied then here? Well, the government did present the facts and the facts that I've summarized. There was no extensive disagreement regarding the facts. And so the District Court reached its conclusion. There's no requirement that it spell out chapter and verse on how it reached that connection when this is a straightforward, simple, factual determination to be made. So I don't think that's really the— Okay, but we have this wrinkle that Nasir came down in the interim, okay? So the District Court was operating under the Stinson body law. Under Stinson, you could just say, okay, the comment says it, end of story, unless it's just manifestly inconsistent with the text. Now we're in a different world. So how does the District Court's Stinson check-the-box approach square with what we now say? Because this is a case of direct review. We can't just rubber stamp it. We have to apply the law that's clear on appeal. How does that square with the legal landscape now in Nasir that a judge has to do more? Your Honor, I do not believe that Nasir changes the factual assessment in this case or any other that the court has to make. What Nasir teaches is that a court has to determine whether the guideline commentary is controlling or not. And we apply Kaiser and the genuine ambiguity principle and all those others. Once it's determined, as I've argued, that the commentary is effective and binding, then we're back to the same factual determination that it would have made before Kaiser and Nasir. There was nothing about Nasir that changed the factual application of this note. If it's binding. Let's say we disagree with you and we think that the comment, it doesn't have an exception for accidental coincidental, we can't read proximity to mean something other than spatial proximity. We think the comment doesn't merit Kaiser difference. Let's say it's step two, but it doesn't matter. Maybe it's a step one. Is there anything left for the note? Does the note still have any weight under Skidmore difference? Does it inform the district court's factual analysis? Is there anything left of it if it doesn't have this legal force? Well, yes, it still could be influential. But what's really interesting is that if this note is wiped away, which I assume is what the defense is suggesting, then all we have is in connection with. And we're back to Loney. And what's really interesting about this case is that we reached the same result under Loney. Loney itself, really at page 288, it quoted approvingly the Sturtevant decision from the first circuit, which said the courts have repeatedly held that the presence of a readily available weapon in a location containing drugs is enough. The so if we're left with no application note, we're back to Loney and we have the exact same result. Let's talk about that. Loney at the end of the opinion, that's the right place to look. Page 288 says what a district judge can reasonably infer. There's a relationship between the gun and the offense. And on page 289 says, you know, but there are times when it's accidental and it doesn't have that. So can reasonably infer suggests it's a matter for the district judge's factual discretion, which is a little different from what 14b says that it's as a matter of law or as a rule. There is a slight, there is a slight difference, Your Honor. And if I could address that for the, certainly if we're only dealing with Loney, then the court does make a factual determination. The guideline application note went slightly beyond that and really created a much, much stronger presumption that the gun in proximity supports the application note. Isn't it an inclusive presumption or rebuttable presumption? I don't see rebuttable language in there. Yeah, I would say it's probably. Excuse me. Because you guys are freezing, you're sort of stepping on each other. I'm having a little trouble hearing both the questions and the answers. I apologize for interrupting. Okay. Thank you. Mr. Salzman, do you know what the question was? And then could you repeat the question for the record and then answer it? Thank you. Sure. It's a little complex and I apologize for the back. Is there a presumption? Is it rebuttable or irrebuttable? Oh, my. I don't think it is not a rebuttable presumption under the guideline. I think that this is a fair exercise of the Sentencing Commission's authority as an agency to interpret the regulation. This is the function of the Sentencing Commission. The commission sees all of these cases. They see hundreds of cases and they have made the determination based on their review that where a gun is located in proximity to drugs or paraphernalia, that it has at least the potential of facilitating the offense. That is a fair and reasonable interpretation of its regulation, and that's why it should be applied. If this court rejects that, if this court sweeps that away and goes back to Loney, then I acknowledge that the court has a little bit extra to do, which is to decide factually in this particular case, could it have been completely coincidental? Now, the one more important thing I need to say is that even if my view is correct regarding the application note, the court still has that obligation. We are dealing with advisory guidelines. This is not a binding statutory mandatory penalty. In any case, a defendant should still make the argument that, yes, I see the application note. I understand what the commission did. It may make sense, but in my case, this is completely unfair. But what happened here is the judge did rely on the advisory note, the commentary, and essentially says, game set and match, it's in close proximity. What does in close proximity even mean? In other words, is it just spatial or is it something else? I don't think it's just spatial. I think that in the average case, it's a geographic thing, I suppose, as to the distance. But certainly, if there's a barrier in between the gun and the drugs, then that would probably take away the conclusion of close proximity. This particular case is not a difficult case, just like Loney was not a difficult case. No, but I'm talking about the next case. Sure. What does in close proximity mean if you're writing this opinion? Loney says at the end, proximity itself may not be enough. The proximity as a general rule means distance, but my suggestion is that that is defeated if there is a barrier or some reason to conclude that it's not immediately proximate and that the person cannot immediately access it. Would it also be cut off, so to speak, proximity being a factor if the presence of the gun was coincidental or accidental? Can we read Smith as providing also some parameters when proximity triggers the application note? Yes, except I would suggest that the Sentencing Commission did that work. The point of the application note, the Sentencing Commission said that it was abiding by Smith, and the reason it authored the application note was to make sure that there wouldn't be accidental possession. And so it adopted the literal language from Smith in 14a, which is that it has the purpose of facilitating another felony offense. And then it simply articulated for drug crimes, this particular factual circumstance, again, based on its familiarity with this very common situation that occurs. This is what the Sentencing Commission does. This is its purpose as the agency that is the expert body with regard to sentencing law. And in individual cases... I understand. I understand. There was a question asked by both Judge Bevis and Judge Ambrose about presumptions. And in West, we have some language that said, with a drug trafficking offense, as opposed to a simple possession case, quote, we can presume a firearm in relatively close proximity is used in connection with that offense, close quote. So haven't we already articulated some presence of a presumption on proximity that is rebuttable if you can show it was accidental or coincidental? Oh, certainly. I hope I was clear that the Sentencing Commission adopted a presumption based on its familiarity with this very common occurrence of guns found in proximity to drugs. If I may, of course, I want to... But the presumption has to be rebuttable. I mean, you can't say there's a presumption that it's irrebuttable? I think that the Commission here has adopted a very clear rule, which is that if it's in proximity, because of the danger of guns, because of the common use of guns in connection with drug crimes, because of the horrors that often result, that if somebody has a gun in proximity to drugs, which they have knowingly possessed... But going back to the first question of Judge Bevis, a hunting rifle coincidentally in the closet, even though it's very close in terms of feet, does not meet the enhancement coming into play here. So that would be a rebuttable presumption. Let me turn it around a little bit, if I may, Your Honor. Say you have a hunting rifle that's laying literally next to the drugs. And, of course, the defendant says, that's my hunting rifle. That has nothing to do with my drug trafficking. That's so that I can go out hunting the next day. This application, though, this enhancement applies because you have an enhanced danger from the fact that a weapon, whether that was your purpose for your own purpose, but a weapon in proximity to drug trafficking is extremely dangerous. And that's the reason that we have this enhancement. I think Loney mentions that a hunting rifle in the closet doesn't kick in the enhancement, even though it's a couple of feet away. I think we have to look at each individual case. Now, if this application note is binding, as I suggested it is, we have to look at each individual case. If the rifle is accessible, if it's proximately located, then the enhancement should apply. That sounds like a polyton factors. Is it a, what type of weapon? Is there, is it loaded? Is it accessible? And is it close by? Is that the way to look at it? That's one way to look at it. But I think the real way to look at it, if I may, Your Honor, is to apply the application note. We start with an ambiguous guideline. We have a reasonable interpretation of it here based on our knowledge of this class of cases. And it should be enforced. And in that rare instance, in which it may produce an unfair result, the court has a ready remedy, which is a variance from the guideline range or a departure. And I want us to talk briefly, just for a second, if I could, about the rule of lenity, with respect to Judge Bibas's concurring opinion. I'll give you one more minute. We're at 19 minutes already. Sure, I would just like the opportunity to hear me. Yes, I did hear you. I don't know that we reached the rule of lenity here, because I think this is a straightforward application of Kaiser and Nasir. If we do, I would actually respectfully request the opportunity to brief that further if the court is interested. It's the government's position, which I don't believe was fully briefed. Can you hear me now? Yeah, I can hear you. But I think Judge Schwartz, you're freezing. Mr. Zalzma asked for an opportunity to submit further briefing. Well, if the court is focused on that, there's an interesting question as to whether the rule of lenity applies to the guidelines. And that's what we would address further if the court is interested in that. All right. Thank you very much. We'll get Ms. Martin back on rebuttal for three minutes, please. I was kicked off, Judge Ambrose. So I did not hear the end of Mr. Zalzma's answer on lenity. And I had one question. Yeah, what he said. You go ahead first, then, with Mr. Zalzma. All right, my very narrow question. What he said was, if rule of lenity is an issue, he'd like to brief it further. There's a threshold issue about whether lenity applies to the guidelines that the government would like to brief. My very narrow question, I appreciate. I'm sorry, I didn't hear you, Judge Bevis. No, no, no. Patty, you froze up for a minute. I didn't. All I said was they want an opportunity to brief whether lenity applies to the guidelines if we get to lenity. Thank you. I just have one very quick question. Paragraph 24 of the pre-sentence report describes observations by the confidential informant, seeing Perez sell drugs on the street and interacting with him later in the day and seeing a firearm in his waistband. Why was that not mentioned as a ground for the enhancement in this case? You know, I don't recall exactly. I would have to check into that. I'm happy to send a letter regarding that. Because there was nothing in the materials that referenced it. I saw it in the pre-sentence report and saw that as a pretty straightforward application of the enhancement and wasn't sure why. Thank you. Judge Ambrose, thank you for letting me ask the question. No, no problem at all. Ms. Martin? Judge Schwartz, I may be able to quickly answer your question. I didn't handle the case below, but the paragraph that you're referring to, I believe was sort of an offhand comment by a confidential informant before the investigation began. One of the interesting facts about this case is that Mr. Perez was charged with nine counts of drug distribution. None of them took place in the house and they all involved a particular group of co-defendants. Who were involved with him in those distributions. The firearm sales were indicted separately and involved only Mr. Perez inside his home. I don't think that the court or the parties were looking back to the comments that instigated the investigation. Thank you. That answers your question. I just really quick want to touch on, I'm not entirely clear Mr. Zausner's position, but my position on 14B is that it is absolutely a per se strict liability, no discretion whatsoever requirement that an accidental or coincidental firearm be included. And for that reason, it is outside the scope of the actual guideline language. How can you say that the commission relied on Smith in developing that split? The commission adopted Smith and then went beyond it. The conflict that the commission was resolving was between about seven circuits that followed Smith and did not accept the accidental or coincidental and three circuits that said mere presence is enough. And the commission was resolving that split whether to go above and beyond Smith. What it did was it adopted Smith and then it added on this 14B, which to my reading is very clear strict liability for mere presence of a firearm. If I could ask you about West, I mentioned West to your colleague. It tells us there's a presumption there. Judge Ambrose and Judge Bibas both asked about presumptions. You were saying this is a strict liability application, yet our case law says it presents a presumption. How do you reconcile West with your view that it's a strict liability application? I'm not sure that the word presumption in West was the proper word to use. I suppose they do call it a presumption, but I don't see any daylight in the rule in 14B in order to rebut that. I did try to sort of grasp onto that. If we want to save the rule and allow some daylight so that it's not strict liability, I would say unique circumstances such as what we present here would be the type of circumstances to rebut that presumption. But are you relying on as a matter of fact to rebut the presumption here, assuming one exists, is that the guns were being used to sell even though they happen to be near the drugs? Is that your factual point? It is. The drugs were stored, but all of the drug sales took place outside of the home in cars, never in the home. Whereas the guns, which were also... Basically, my position is they were both held for sale in that room, but they were not related in any way in terms of... I think the example I used in my brief was that a grocery store sells apples next to oranges, but they're not sold in connection with one another. Really quickly, I just want to point out, we talked a lot about the language in Loney and specifically at the end, I just wanted to point out that in rejecting Mr. Loney's argument that the connection has to be causal, this court talked about the potential... It gave an example at page 285 of a person who possesses a gun because of the potential to facilitate. It is not coincidental. The court also uses the word later at 288 when citing Sturdivant, it says a person who holds a gun in reserve. So there is some intention to that possession of the gun. It has a potential to facilitate and that is the reason why it is there. It is not there coincidentally or by accident. I want to clarify what Loney says and that's consistent with Smith and that is why note 14B improperly expands all of that. The commission, of course, can come back and change the language in the guideline. We're not arguing that it can't expand Smith. We're saying that it didn't do it the right way and therefore the note is not entitled to any deference. Any further questions? I know I've exceeded my... Go ahead. Does anybody have a question? No. Well, thank you very much and I thank both counsel. Again, I apologize that we would normally go much longer than this on this interesting issue but because of the schedule, we did go over but not as much as typical. Anyway, thank you both for being with us and under advisement.